

NORTHERN DISTRICT OF TEXAS
FILED

NOV 18 2015

CLERK, U.S. DISTRICT COURT
By_____
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ABRAHAM EUGENE SPEAR, | § | |
| Petitioner, | § | |
| | § | 3:14-CV-3386-D |
| v. | § | 3:12-CR-0323-D |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the

United States District Court for the Northern District of Texas. The Findings, Conclusions and

Recommendation of the United States Magistrate Judge follow:

**I.      Procedural Background**

Pursuant to a plea agreement, Petitioner pled guilty to attempted enticement of a minor, in

violation of 18 U.S.C. § 2422(b). On September 6, 2013, the district court sentenced him to 210

months in prison. Petitioner did not file an appeal.

On September 18, 2014, Petitioner filed this petition for writ of habeas corpus pursuant to

28 U.S.C. § 2255. He argues he received ineffective assistance of counsel when: (1) counsel

failed to fully inform him of the consequences of pleading guilty or proceeding to trial, and failed

to properly advise him of his sentence exposure; and (2) counsel failed to consult with him about

filing an appeal.

On November 19, 2014, the government filed its response. On December 3, 2014,

Petitioner filed a reply.  On November 4, 2015, the Court held an evidentiary hearing.  The Court

now finds the petition should be denied.

## II.      Factual Background

FBI Agent Aaron Covey, while working in an undercover capacity, entered a publicly

available website and posted that "she" was "just a mom of curious gerlz."  This website allowed

users to create profiles, upload images and videos, and hosted user files.

On or about August 27, 2012, Petitioner sent an instant message within the website chat

function requesting to chat with "her."  Agent Covey and Petitioner communicated via Yahoo!

Instant Messenger (YIM).  Petitioner requested that the "mom" send him photos of the girls and

offered to "teach" the girls about sex acts.  Over the course of the next few weeks, Petitioner

communicated via text message and cell phone with Agent Covey, who Petitioner thought was a

mother of two girls, ages seven and nine.  During these communications he persuaded, or

attempted to persuade, the "mother" to allow him to meet her two girls to engage in various

sexual acts with him.

On September 20, 2012, Petitioner traveled from Tennessee to Dallas to perform with a

band at a local bar.  He wanted to meet Agent Covey but refused to meet "her" without the girls.

Petitioner agreed to meet the mom at a restaurant in Dallas.  After he was positively identified,

FBI Agents arrested him.

## III.     Discussion

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1)

counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so

gravely as to deprive Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.*  "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

When a petitioner argues his guilty plea was not voluntary due to the ineffective assistance of counsel, he must show that his counsel's advice to plead guilty fell below the range of competence demanded of an attorney in a criminal case. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).  Further, he must show prejudice by establishing "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206.

## A.    Valid Guilty Plea

Petitioner argues his two defense attorneys failed to fully inform him of the consequences of pleading guilty or proceeding to trial, and failed to properly advise him of his sentence exposure.  Petitioner claims counsel informed him that if he proceeded to trial, and was convicted, he would receive at least twenty-five years in prison.  If he pled guilty, he states

3

counsel informed him they saw no reason he would receive more than ten years in prison.

A defendant's guilty plea must be made voluntarily, and the defendant must "make related waivers knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993).

Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of the guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). Further, "[w]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (*quoting United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

In this case, the record shows Petitioner voluntarily pled guilty and that he was fully informed of his rights. Petitioner stated he reviewed the indictment and discussed the charge "many times" with his attorneys. (Rearr. at 5-6.) He stated he reviewed the plea agreement with

his attorneys and that he understood the documents. (*Id.* at 7.) The district court informed Petitioner that his maximum sentence exposure was life in prison, and his statutory mandatory minimum sentence was ten years in prison. (*Id.* at 12-13.) Petitioner stated he understood his sentence exposure. (*Id.*) Petitioner stated he understood that the judge would decide his sentence, that the judge could impose a sentence more harsh than the guideline range, that no one had made him a specific promise or prediction as to what his sentence would be, and that he understood no one, including his attorneys, could predict in advance what his sentence would be. (*Id.* at 16-17.)

The plea agreement Petitioner signed informed Petitioner that his maximum sentence was life in prison and his mandatory minimum sentence was ten years in prison. The plea agreement also stated that Petitioner understood no one could predict with certainty what Petitioner's sentence would be, and that the sentence would be determined by the court. The agreement stated that no guarantees or promises were made by anyone to Petitioner as to what sentence the court would impose.

At the evidentiary hearing, Petitioner testified he understood his mandatory minimum sentence was ten years, and the guideline range was seventeen and a half years. Petitioner claimed his attorneys told him they saw no reason he would receive more than ten years if he pled guilty. He claimed he would have considered going to trial if he had known he would receive a sentence of seventeen and a half years.

Petitioner's mother testified at the evidentiary hearing that defense attorney Bill Wirskye told her it was possible Petitioner could receive a sentence of seventeen and a half years, but it was likely he would receive ten years.

Attorney Wirskye testified he discussed the trial issues, sentencing guidelines and plea agreement with Petitioner. Wirskye stated he informed Petitioner his guideline range was 292 to 365 months in prison, and that he told Petitioner that if he pled guilty he would probably receive a three-level reduction for acceptance of responsibility, which would put the guideline range at 210 to 262 months. Wirskye testified that he never told Petitioner or Petitioner's mother that Petitioner would likely receive a sentence of ten years.

Attorney Doug Mulder testified that he explained to Petitioner the consequences of proceeding to trial or pleading guilty. Mulder testified he never told Petitioner he would likely receive ten years if he pled guilty. Instead, Mulder stated he informed Petitioner he would likely receive a sentence of seventeen and a half years if he pled guilty.

The Court finds the testimony of attorneys Wirskye and Mulder to be credible, and the testimony of Petitioner and his mother on these issues not to be credible. Petitioner has failed to show his guilty plea was involuntary or that his attorneys led him to believe he would receive no more than a ten year sentence. He has failed to establish ineffective assistance of counsel.

**B.     Appeal**

Petitioner claims his counsel was ineffective because counsel failed to consult with him about filing an appeal. In *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000), the Supreme Court held that an attorney must consult with his client regarding filing an appeal. To "consult" requires that counsel make a reasonable effort to discover the defendant's wishes regarding an appeal. *Id.* at 478. If counsel consults with the defendant about filing an appeal, counsel is only deficient if he fails to follow the express instructions of the defendant. *Id.*; *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (same).

6

If counsel fails to consult with the defendant, the question becomes whether this failure to consult was unreasonable. Counsel must consult with the defendant regarding an appeal when: (1) there is reason to think that a rational defendant would want to appeal; or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Pham*, 722 F.3d at 324.

In this case, Petitioner claims his attorneys failed to consult with him about filing an appeal, and that they told him he could not file an appeal. At the evidentiary hearing, Petitioner stated he did not instruct his attorneys to file an appeal because he had no contact with his attorneys after sentencing. Petitioner's mother testified that attorney Wirskye told her Petitioner could file a habeas petition pursuant to 28 U.S.C. § 2255, but he never informed her of any appeal rights. She stated that directly after sentencing, she asked what they could do. She stated she did not ask counsel to file an appeal because she did not know Petitioner could file an appeal.

Attorney Wirskye testified at the evidentiary hearing that he consulted with Petitioner regarding his appellate rights numerous times prior to sentencing. Wirskye stated he explained the appellate waiver in the plea agreement to Petitioner, and that he explained Petitioner's limited appellate rights. Wirskye stated he never told Petitioner he could not file an appeal and that Petitioner never informed him wanted to file an appeal. Wirskye also testified that he spoke to Petitioner's mother directly after sentencing, and later during a phone call. Wirskye stated he called her because she was distraught after sentencing. Wirskye stated Petitioner's mother did not ask about an appeal, or what Petitioner could do about the sentence. Wirskye stated he never informed her that Petitioner could not file an appeal, or that Petitioner could only file a § 2255 petition.

Attorney Mulder testified that prior to sentencing he explained Petitioner's appellate rights with him and discussed the appeal waiver. He explained to Petitioner that his appeal rights were extremely limited. Mulder testified that neither Petitioner nor anyone in Petitioner's family informed him that Petitioner wanted to file an appeal.

The Court finds that prior to sentencing, both defense counsel consulted with Petitioner regarding the filing of an appeal. After sentencing, counsel did not further consult with Petitioner regarding an appeal. The Court finds that Petitioner did not instruct his counsel to file an appeal, that he did not demonstrate to counsel he wanted to appeal, and that there was no reason, given Petitioner's limited appeal rights, for counsel to believe that a rational defendant would want to appeal. The Court also finds that Petitioner's mother did not instruct counsel to file an appeal, did not ask attorney Wirskye after sentencing what else they could do about the sentence, and did not indicate that Petitioner wanted to appeal.

Additionally, Petitioner has failed to show he suffered the required *Strickland* prejudice. He has failed to show there is a reasonable probability that, but for counsel's alleged deficient performance, he would have timely appealed. The Court does not find Petitioner's and his mother's testimony that counsel told them they could not file an appeal to be credible. Petitioner testified during sentencing that he reviewed and understood the appeal waiver in his plea agreement which stated Petitioner had a limited right to appeal. The district court also informed Petitioner at sentencing of his limited appeal rights and Petitioner stated he understood these rights. Further, Petitioner waited over a year after sentencing to file this § 2255 petition, indicating it is unlikely he would have timely appealed. *See United States v. Bejarno*, 751 F.3d 280, 287 (5th Cir. 2014). Petitioner has failed to establish his ineffective assistance of counsel

claims.

## IV.   <u>Recommendation</u>

For the foregoing reasons, the Court recommends that Petitioner's § 2255 petition be

DENIED with prejudice.

IT IS SO ORDERED.

Signed this 18th day of November, 2015.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific.  Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the district court, except upon grounds of plain

error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).